455 F.2d 123
 Blue Sky L. Rep. P 71,013, Fed. Sec. L. Rep. P 93,352
James W. PARRENT and William K. Hargett, Jr., Plaintiffs-Appellees,
v.
MIDWEST RUG MILLS, INC., an Illinois corporation, Beacon
Hills of North Carolina, Inc., a North Carolina corporation,
d/b/a Mountain Rug Mills, and John H. Boss, Defendants, and
Robert Boss, Defendant-Appellant.
 No. 18728.
 United States Court of Appeals,
Seventh Circuit.
 Jan. 26, 1972.
 
 Max Chill, Charles B. Bernstein, Byron M. Getzoff, Chicago, Ill., for defendant-appellant Robert Boss; Max & Herman Chill, Chicago, Ill., of counsel.
 Thomas A. Mass, Edwin Josephson, Chicago, Ill., for plaintiffs-appellees James W. Parrent and William K. Hargett, Jr.; Mass, Miller & Josephson, Chicago, Ill., of counsel.
 Before KILEY, PELL and STEVENS, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 Defendant Robert Boss is sole appellant from a judgment against defendants in a bench trial of plaintiffs' suit to set aside their purchases of stock, of the defendant companies, as fraudulent under federal and Illinois securities laws and under common law. We reverse the judgment as to Robert Boss alone.
 
 
 2
 Parrent and Hargett (plaintiffs) were employed by defendant Midwest Rug Mills, Inc. (Midwest), respectively as bookkeeper in September, 1959, and as salesman in February, 1959. Both Midwest and defendant Beacon Hills of North Carolina, Inc. (Beacon Hills) were, during the time relevant to this suit, closely held Boss family corporations. John Boss was chairman of the board, president, director and controlling stockholder of both Midwest and Beacon Hills. His son Robert Boss was a vicepresident of Midwest, and stockholder and director in both companies.
 
 
 3
 Plaintiffs at various times during their employment purchased stock in Midwest and Beacon Hills until July, 1965. The companies did not prosper. Midwest failed and was liquidated, and thereafter Beacon Hills went into receivership. Employment of both plaintiffs by Midwest ended in 1967. On October 8, 1968 they filed the joint complaint in this suit alleging that their purchases of stock in both companies were induced by fraud of the defendants. Plaintiffs[1] seek in Counts I and II to recover damages for violation of Section 17(a) of the Securities Act of 1933 (15 U.S.C. Sec. 77q(a)), Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. Sec. 78j(b)), and SEC Rule 10b-5 (17 C.F.R. Sec. 240.10b-5); in Counts III and IV to rescind the sales and recover the purchase price under Section 13 of the Illinois Securities Law of 1953 (Ill.Rev.Stat. ch. 121 1/2, Sec. 137.13); and in Counts V and VI to recover damages for common law fraud.
 
 
 4
 Defendants moved to strike the complaint on the ground that all counts were barred by Illinois statutes of limitations. The court expressly denied the motion so far as it was directed to Counts I, II, V and VI, the federal securities and Illinois common law counts. No ruling is recorded as to Counts III and IV. We shall presume therefore that the motion was also denied as to those counts. The denial of the motion is challenged and presents the first question before us.[2]
 
 I. The Statute of Limitations
 
 5
 There is no general federal statute of limitations and no provision in either Section 17 of the Securities Act of 1933 or Section 10 of the Securities and Exchange Act of 1934 governing the suit before us.[3] The appropriate limitations act in the forum state of Illinois therefore controls. International Union, United Automobile, etc., Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Sackett v. Beaman, 399 F.2d 884, 890 (9th Cir. 1968); Janigan v. Taylor, 344 F.2d 781, 783 (1st Cir. 1965); Northern Trust Co. v. Essaness Theatres Corp., 103 F.Supp. 954, 965 (N.D.Ill.E.D.1952). The Illinois general five year statute of limitations (Ill.Rev.Stat. ch. 83, Sec. 16) covers actions for fraud, Rozny v. Marnul, 43 Ill.2d 54, 69, 250 N.E.2d 656, 664 (1969). The three year limitation applies to actions brought under Section 13 of the Illinois Securities Law. We must therefore choose which of the two statutes "best effectuates" the federal policy at issue. Charney v. Thomas, 372 F.2d 97 (6th Cir. 1967); Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir. 1970). The question posed here is one of first impression.[4]
 
 
 6
 Defendants rely upon Vanderboom to support their contention that the Illinois Securities Law three year limitation period should be applied. Plaintiffs rely upon Charney to support their contention that the general five year limitation period for fraud actions governs.
 
 
 7
 In Charney and Vanderboom-involving questions of law similar to those before us-the courts, in deciding which forum statute should be chosen, applied the resemblance test, i. e., each court applied the forum state statute of limitations which more closely resembled Rule 10b-5. The divergent results in the two cases lay in the courts' differing interpretations of the scope of 10b-5.
 
 
 8
 The Sixth Circuit in Charney thought that a plaintiff under 10b-5 was required to prove scienter as he would have had to do at common law. Since the Michigan Blue Sky Law had no provision like 10b-5, the court held that the Michigan general six year limitation applicable to common law fraud cases ought to apply,[5] although 10b-5 was "not exactly" like the common law. In Vanderboom the Eighth Circuit read Rule 10b-5 in a broader sense that the Sixth Circuit had. The court decided that a plaintiff need not prove scienter under 10b-5 but could recover for negligent as well as intentional misrepresentation. The court applied the three year limitation of Section 22 of the Arkansas Securities Act to the 10b-5 action although Section 22 was modeled after Section 12(2) of the Securities Act of 1933. The reasons given were the "commonalty of purpose" and the lack of defenses available under both Rule 10b-5 and Section 22 of the Arkansas Securities Act as compared with the Arkansas common law fraud. The court thought a suit under 10b-5 was "a blue sky type" of claim specifically aimed at securities fraud.
 
 
 9
 We agree with the Eighth Circuit's interpretation of 10b-5 in Vanderboom. We hold therefore that the three year limitation provision in the Illinois Securities Law applies to the federal actions in Counts I and II of the complaint, since it is our view that that provision "best effectuates the policy" of protecting the "uninformed, the ignorant, the gullible."[6] The Illinois Securities Law has a similar purpose.[7]
 
 
 10
 Section 10(b) (15 U.S.C. Sec. 78j(b)) provides that:
 
 
 11
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange-
 
 
 12
 ******
 
 
 13
 * * *
 
 
 14
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 
 
 15
 It will be noted that Section 10(b) does not create a civil remedy by its terms. But it is now established that it implies a civil remedy.[8]
 
 
 16
 Section 10(b) does however grant the Securities and Exchange Commission power to prescribe rules and regulations "necessary or appropriate" in the public interest or for the protection of investors. Rule 10b-5, implementing Section 10(b), represents an exercise of that power:
 
 
 17
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 
 
 18
 ******
 
 
 19
 * * *
 
 
 20
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, . . .
 
 
 21
 ******
 
 
 22
 * * *
 
 
 23
 Except for the interstate elements in 10b-5, Section 12 of the Illinois Securities Law (Ill.Rev.Stat. ch. 121 1/2, Sec. 137.12) covers the same violations as 10b-5.
 
 
 24
 It is clear that under the resemblance test[9] the three year limitation in Section 13, subd. D of the Illinois Securities Law (Ill.Rev.Stat. ch. 121 1/2, Sec. 137.13, subd. D) applies to the 10b-5 actions stated in Counts I and II.[10]
 
 
 25
 The three year limitation is also closer to the express limitation periods in the various sections of the federal act, noted above in n. 3. Furthermore, logic dictates selection of the three year Illinois limitation as tending more toward an orderly development of law, than reaching into a different Illinois Act (Ill.Rev.Stat. ch. 83, Sec. 16) for the appropriate limitation.
 
 
 26
 Finally, and importantly, we think that since Section 137.12 of the Illinois act so closely parallels 10b-5, the inference follows that the Section 137.13 three year limitation better effectuates the federal policy expressed in 10b-5. Neither Section 137.12 nor 10b-5 contains the defense that one "did not know and in the exercise of reasonable care could not have known" of the misrepresentation which is contained in Section 12(2) of the federal statute (15 U.S.C. Sec. 77l(2)) and at common law. The liability under 10b-5 and Section 137.12 is stricter; their remedies should have a greater deterence against fraud.
 
 
 27
 Plaintiffs' reliance upon Fratt v. Robinson, 203 F.2d 627 (9th Cir. 1953), is of no aid to their position that the Illinois five year statute applies. There the court in a suit similar to plaintiffs' held a three year Washington state limitation governing actions "upon the ground of fraud" applied, rather than the two year limitation governing actions "to recover on a liability created by statute." Fratt at 634-635. There was no reference there to any Washington securities law which resembled Rule 10b-5. Neither is Northern Trust Co., supra, of aid to plaintiffs. That decision was rendered in January, 1952, before the Illinois Securities Law was enacted in July, 1953. The choice of Illinois statute of limitations which faced the court was between Section 16 and Section 23 of Chapter 83, Smith Hurd Annot.-dealing respectively with civil actions and fraudulent concealment of causes of action-both of which provided five year limitations.
 
 
 28
 We think no discussion is needed-in view of our discussion in the previous paragraphs-to demonstrate that Counts III and IV alleging violations of the Illinois Securities Law are also covered by the three year limitation contained in Section 137.13, subd. D; and Counts V and VI are covered by the Illinois five year general statute of limitations which applies to common law fraud.
 
 
 29
 II. Commencement of the Statute of Limitations
 
 
 30
 The next question is at what point does the Illinois three year limitation statute commence to run. The answer depends first upon whether the purchases of securities by plaintiffs were embraced in a "total scheme" to sell securities to plaintiffs by fraudulent means at excessive prices, as contended by plaintiffs, or were independent transactions, as claimed by Boss.
 
 
 31
 Plaintiffs' suit was filed October 8, 1968. The dates of the purchases of stock were February 25, 1959, February 15, 1960, January 31, 1962, January 23, 1963, January 25, 1963, April 1, 1963, April 29, 1964, May 12, 1964, November 24, 1964, July 14, 1965 and July 15, 1965. Initially we should point out that plaintiffs paid for the stock at the time of each transaction with money from bank loans later repaid by deductions from their salaries.
 
 
 32
 Under Illinois securities law, a buyer has three years to sue "not only from the date the right first accrues, but from the date the sale is completed. . . ." Silverman, supra, n. 7, 63 Ill. App.2d at 101-102, 211 N.E.2d at 599. It is apparent that under Boss's contention, if correct, no purchase was transacted within the three year limitation period measured back from the October 8, 1968 filing date of the complaint. (Plaintiffs' later amendments related back to that date.) But under the contention of Parrent and Hargett, if correct, the stock transactions after April 29, 1964 would not be barred by the five year fraud limitation period.
 
 
 33
 The Boss contention-that the transactions were independent of each other-is, in our view, the correct one and we so hold. There is no reason why, if the transactions were alleged in separate counts in plaintiffs' complaint, recovery as to each count might not be had, under proper proof; or, if the transactions were charged separately as criminal offenses under the Act in various counts in an indictment charging willfulness (15 U.S.C. Sec. 77x), why conviction might not be had under each count. See United States v. Schaefer, 299 F.2d 625 (7th Cir. 1962).
 
 
 34
 We must read into the three year limitation applied in the Rule 10b-5 count the "equitable doctrine" that the statute does not begin to run until the fraud is discovered where a plaintiff injured by fraud "remains in ignorance of it without any fault or want of diligence or care on his part . . . Bailey v. Glover, 21 Wall. 342, 348, 22 L.Ed. 636." Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).[11]
 
 
 35
 The district court, however, made no finding that plaintiffs Parrent and Hargett were ignorant of the alleged fraud until December, 1966, as they pleaded; and the court could not have validly found that from the evidence. Nor could the court have found, on this record, that the statute of limitations had been tolled because plaintiffs were ignorant of the alleged fraud because of their fault or lack of diligence.
 
 
 36
 There is nothing to show that as to each transaction the plaintiffs should not have, in their positions, discovered the "fraud," if any, had they been reasonably diligent.
 
 
 37
 We find nothing in the record to support a finding that Robert Boss participated in any continuing scheme to defraud plaintiffs.
 
 III. Pendent Jurisdiction
 
 38
 In view of our conclusions in Parts I and II of this opinion, all that remains viable in plaintiffs' complaint by virtue of the district court's application of the pendent jurisdiction doctrine are the common law fraud Counts V and VI.
 
 
 39
 Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The federal actions, as alleged, are "not insubstantial" and both the federal and state law counts "derive from a common nucleus of operative fact"-therefore the district court properly exercised its discretion in entertaining jurisdiction. Gibbs at 725, 86 S.Ct. at 1138; Abrams v. Carrier Corp., 434 F.2d 1234, 1254 (2nd Cir. 1970).
 
 
 40
 Under Gibbs, the justification of the exercise of discretion in hearing state claims
 
 
 41
 lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims. . . . Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.
 
 
 42
 Gibbs 383 U.S. at 726-727, 86 S.Ct. at 1139. See also Abrams v. Carrier Corp., 434 F.2d at 1254.
 
 
 43
 It is needless for us to remand the common law counts to the district court for its exercise of discretion, as the court of appeals did in Vanderboom. There the district court had dismissed the state claim and the court of appeals had ordered it reinstated. Here the district court entertained jurisdiction on both the federal and state counts and decided in favor of plaintiffs.
 
 
 44
 We are faced with the alternatives of remanding Counts V and VI to the district court with directions to dismiss them because the court, before trial, should have dismissed the other four counts as barred by the statutes of limitations, Gibbs 383 U.S. at 726, 86 S.Ct. 1130; or reviewing the district court's judgment for plaintiffs on Counts V and VI.
 
 
 45
 The first alternative can be adopted on the ground of the Supreme Court's suggestion "that dismissal is mandatory where the federal claim is disposed of before trial." United Mine Workers v. Gibbs and Pendent Jurisdiction, 81 Harv.L.Rev. 657, 664 (1967). We, however, do not find that mandate precisely applicable here where the district court declined to dismiss, albeit erroneously, the federal claims. We think that in the interest of "judicial economy, convenience and fairness" to the parties, we should adopt the second alternative and review the district court's findings and judgment disposing of Counts V and VI. We think that countervailing considerations outweigh our disinclination to offend against "THE PERVASIVE PRINCIPLE OF FEDERAL-STATE COMITY." United Mine Workers v. Gibbs and Pendent Jurisdiction, supra at 665.
 
 
 46
 Certainly judicial economy directs that we dispose of the issues here instead of sending the case back to the district court with directions to dismiss Counts V and VI and virtually sending the plaintiffs to the state court where it is likely that the case would go through the trial and appellate courts. The parties would be greatly inconvenienced by having to retry the issues. It also would be unfair to the parties, who have litigated the issues in a three day trial in the district court and filed briefs and argued here, to have us refrain from disposing of Counts V and VI after passing on the judgment with respect to the other counts, especially in view of the "federal judicial resources" already committed.[12]IV. The Judgments on Counts V and VI
 
 
 47
 The question now is whether the judgment for plaintiffs upon the record supports a finding of common law fraud on the part of Robert Boss as alleged in Counts V and VI. The Illinois five year statute of limitations for common law fraud bars liability upon transactions prior to October 8, 1963, in view of the October 8, 1968 filing date of the complaint. The transactions not barred are: as to Parrent, the November 24, 1964 and July 14, 1965 purchases of Midwest stock and the April 29, 1964 purchase of Beacon Hill stock; and as to Hargett, the May 12, 1964 purchase of Beacon Hill stock and the July 15, 1965 purchase of Midwest stock.
 
 
 48
 We hold that there is no substantial evidence to support the judgments under Counts V and VI. We have already noted in the early part of this opinion that there are no specific findings of fraud on the part of Robert Boss. The findings, except for two, are as to unnamed "defendants" or "individual defendants" that they had by misrepresenting and omitting material facts induced the plaintiffs to make the purchases. The two findings excepted name John Boss. The complaint alleged that Robert Boss had "conspired" to defraud plaintiffs. There is no finding that he conspired to defraud plaintiffs and the record would not support such a finding if it had been made.
 
 
 49
 There is no testimony that Robert Boss made any representations to induce Parrent to make the purchase on November 24, 1964. Nor is there testimony that he omitted to state any material fact about the condition of Midwest at the time which Parrent did not know or which he could not learn in his position with the company. There is no testimony of any participation by Boss in the July 14, 1965 Midwest stock transaction. His only participation in the April 29, 1964 Beacon Hill stock transaction was his accompanying Parrent to the bank and purchasing some of that stock for himself.
 
 
 50
 There is testimony that Robert Boss wrote a letter to Hargett with respect to the May 12, 1964 Beacon Hill stock transaction telling him that he should purchase the stock and that the purchase money would be used in expansion of the company. The letter was not produced and Robert Boss did not recall writing it. In any event there is no testimony that Boss in the letter, if written, misrepresented or omitted material facts bearing on the conditions of the company. Robert Boss also bought stock at the same time and in the same manner in the May 12, 1964, as well as in the July 15, 1965, Midwest stock transaction. There was no testimony that Robert Boss misrepresented or omitted material facts about the company which would taint the purchases.
 
 
 51
 The record does not support the findings of fact and the conclusions of law in so far as they find intentional fraud on the part of Robert Boss.
 
 
 52
 For the reasons given in this opinion, the judgments against Robert Boss are reversed and the cause is remanded with directions to dismiss the complaint as to him.
 
 
 53
 STEVENS, Circuit Judge (concurring).
 
 
 54
 Judge Kiley's opinion demonstrates that none of the transactions subsequent to October 8, 1963, was fraudulent. I think it is equally clear that none of them reveals any violation of Rule 10b-5 by appellant. Accordingly, I concur in the judgment.
 
 
 
 [1]
 Parrent's actions are contained in Counts I, III and V; Hargett's actions are contained in Counts II, IV and VI
 
 
 [2]
 The defendants' motion to strike certain transactions in the complaint as being barred by the statute of limitations was based on the five year general statute of limitations (Ill.Rev.Stat. ch. 83 Sec. 16) rather than the three year statute of limitations of the Illinois Securities Law (Ill.Rev.Stat. ch. 121 1/2, Sec. 137.13 subd. D). We presume that had the decision in Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir. 1970), infra, then been rendered, the defendants would have amended their motion and the district court would have favorably ruled for the motion to strike the counts barred by the three year statute of limitations
 
 
 [3]
 The original Securities Act of 1933 provided a limitation of two years from discovery of the alleged misrepresentation for all civil actions under the Act, and a ten year over-all limitation for all actions except those under Section 12(2) (May 27, 1933, ch. 38, Title I, Sec. 13, 48 Stat. 84). The 1934 amendments to the Act, however, reduced the limitation period to its "present shrunken form": Sections 11(a) (15 U.S.C. Sec. 77k(a)), 12(1) and 12(2) (15 U.S.C. Sec. 77l(1) and (2)) limited actions brought under these sections to one year from discovery and three years from the time of wrong (15 U.S.C. Sec. 77m). Substantially the same limitations are applicable to actions under Sections 9(e) (15 U.S.C. Sec. 78i(e)), 18 (15 U.S.C. Sec. 78r), and 29(b) (15 U.S.C. Sec. 78cc) of the Securities and Exchange Act of 1934. Schulman, Statutes of Limitations in 10b-5 Actions: Complication Added to Confusion, 13 Wayne L.Rev. 635, 637 (1967)
 
 
 [4]
 This court has not before this been presented with the necessity in a Rule 10b-5 suit of choosing between the statute of limitations in the Illinois Securities Law and the general Illinois Statute of Limitations covering fraud. (Ill.Rev.Stat. ch. 83, Sec. 16). The court did affirm judgments in Butterman v. Steiner, 343 F.2d 519 (7th Cir. 1965), in which the district court had chosen the Illinois five year general statute of limitations governing common law fraud rather than the three year statute of limitations in Section 13 of the Illinois Securities Law, and Morgan v. Koch, 419 F.2d 993 (7th Cir. 1969), in which the district court had chosen Indiana's six year general statute of limitations governing common law fraud cases over the two year limitation in Indiana's securities law. On appeal, however, no party in either case challenged the district court choices
 
 
 [5]
 But the court implied that had there been a Michigan blue sky statute identical with 10b-5, it would have applied the three year limitation
 
 
 [6]
 See Surowitz v. Hilton Hotels Corp., 342 F.2d 596, 602 (7th Cir. 1965)
 
 
 [7]
 Rule 10b-5 differs from the Illinois law in that 10b-5 provides a remedy for the seller in addition to the remedy for the buyer. "The Illinois Securities Act of 1919 was enacted for the protection and benefit of the public as a whole-'to protect the public from the dishonesty, incompetence, ignorance, and irresponsibility of persons engaging in the business of disposing of securities of uncertain value whereby the inexperienced and confiding are likely to suffer loss.' (Stewart v. Brady, 300 Ill. 425, 442, 133 N.E. 310)." Silverman v. Chicago Ramada Inn, Inc., 63 Ill.App.2d 96, 100, 211 N.E.2d 596, 598 (1965)
 
 
 [8]
 See Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971)
 
 
 [9]
 Schulman, supra n. 3. Professor Schulman notes that selection of the forum state limitations "which will mate most auspiciously" with the federal action is one of the problems (at 640) in applying the "hoary doctrine" that federal actions must choose a forum state limitation law for 10b-5 actions (at 638). Schulman favors application of limitation periods expressed in the "federal securities acts" (at 643)
 
 
 [10]
 "Limitations provisions in state blue sky laws, which are aimed at securities frauds, would seem an obvious choice in 10b-5 cases." Bromberg, Securities Laws: Fraud-SEC Rule 10b-5, Sec. 2.5(1), at 41-42 n. 105 (1969)
 
 
 [11]
 See also the Illinois rule. Rozny, supra 43 Ill.2d at 72-73, 250 N.E.2d at 665-666
 
 
 [12]
 For further discussion of these elements which the Court in Gibbs considered necessary for proper application of the doctrine of discretion in pendent jurisdiction questions, see United Mine Workers v. Gibbs and Pendent Jurisdiction, supra, at 664-671