Charles NICKELS, Margaret Nickels, on behalf of themselves and all other shareholders of Koehler Management Corporation, Plaintiffs-Appellants,

v.

KOEHLER MANAGEMENT CORP., et al., Defendants-Appellees.

Rhoda V. McINTYRE, Individually and as a representative of a class, Plaintiff-Appellee,

v.

The FIRST NATIONAL BANK OF CINCINNATI, Individually and as agent, Defendant-Appellant.

Nos. 75–1684, 75–2200.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 18, 1975.

Decided Sept. 2, 1976.

Dennis E. Murray, James Kimbler, Murray & Murray Co., Sandusky, Ohio, for plaintiffs-appellants.

Stanley Goodman, (Eisenhauer, Gillmor, Goodman, Janis, Johnston, Siegel, Fischer) Goodman & Goodman, Cincinnati, Ohio, for Koehler Management Corp.

Eugene N. Balk, Toledo, Ohio, for Ray Molder and Alfred Rhoden, M.D.

Robert B. Gosline, Shumaker, Loop & Kendrick, Toledo, Ohio, for Schuster.

Louis Hattner, Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, Ohio, for Gerald Koehler.

Robert W. Rowley, Toledo, Ohio, for Roger Benham.

L. Clifford Craig, Taft, Stettinius & Hollister, Cincinnati, Ohio, Chapman & Cutler, Chicago, Ill., for First Nat. Bank of Chicago.

Thomas L. Conlan, Kyte, Conlan, Wulsin & Vogeler, Frederick J. McGavran, Cincinnati, Ohio, for Rhoda McIntyre.

Before PECK, McCREE and MILLER,* Circuit Judges.

McCREE, Circuit Judge.

We consolidated these two appeals because they present the same question: what statute of limitations should be applied in an action in a United States District Court in Ohio based upon Rule 10b–5, § 10(b) of the Securities Exchange Act of 1934, and § 17(a) of the Securities Act of 1933. In case No. 75–2200, *McIntyre v. First National Bank of Cincinnati,* the District Court for the Southern District of Ohio, Western Division, applied Ohio's four year statute of limitations for general fraud, Ohio Rev. Code 2305.09. In case No. 75–1684, *Nickels v. Koehler Management Corp.,* the District Court for the Northern District of Ohio, Western Division, applied the Ohio two year blue sky period of limitations, Ohio Rev. Code 1707.43.

We hold that the four year period of limitation in Ohio Rev. Code 2305.09 should be adopted because it best effectuates the policies of the federal securities laws.

The plaintiff in *McIntyre* is a former shareholder in the Verkamp Corporation, which was acquired by KDI Corporation and KDI Verkamp pursuant to a merger agreement approved by the Verkamp shareholders. McIntyre alleged that the approval of the merger was fraudulently induced by the KDI defendants, and that the merger agreement provided for the exchange of 27 shares of KDI stock, which had a value of less than $2 per share, for each share of Verkamp stock, which had a value of $900 per share. Another portion of the original complaint charged the First National Bank with a transfer in defraud of creditors and a fraudulent conveyance both arising from KDI's pledge to the bank of the shares and assets of the former Verkamp corporation after the merger. In a second amended complaint, McIntyre also alleged that First National controlled, aided and abetted, and participated in the fraudulent acquisition of Verkamp as security for KDI's debts to First National and a group of banks represented by First National. The bank contended that the new claims in the second amended complaint did not arise out of the transaction set forth in the original complaint, and that they were barred by the two year statute of limitations in the state blue sky law.[1] The district court granted McIntyre's motion for leave to file the second amended complaint, holding that the four year general fraud limitation, Ohio Rev.Code 2305.09, applied. The district court certified the question of the proper limitation period under 28 U.S.C. § 1292(b), and we granted leave for an interlocutory appeal.

The plaintiffs in the second case, *Nickels,* are stockholders in the Koehler Management Corporation. The allegations of the complaint are as follows. In 1970, pursuant to the recommendation of their board of directors, the stockholders of Koehler approved a merger with Ohio Indiana Mutual Corporation. Several Koehler directors were also directors of Ohio Indiana. At the

---

* Judge Miller died April 12, 1976 and did not participate in this opinion.

1. The only claim against First National in the original complaint arose out of an alleged transfer in defraud of creditors, which took place after the merger. The second amended complaint included, for the first time, the claim that First National was also liable for the injury suffered by the plaintiffs as a result of the merger, on the theory First National had become a controlling person and an aider and abettor. The district court held that if the two year statute of limitations were applicable, the new claims of First National's liability relating to the merger would not relate back because they did not arise out of the same transaction set forth in the complaint. F.R.Civ.P. 15(c).

time they urged approval of the merger, the Koehler directors knew or should have known that in 1969, Ohio Indiana had loaned $590,000, with no collateral, to Gerald Koehler (who was at that time president of both Koehler and Ohio Indiana), that the loan was still outstanding, and that it was uncollectible. The complaint alleges that when the public learned of the loan, the value of the Koehler stock dropped from $12.00 per share to $.60 per share. The district court sustained the defendants' motion to dismiss on the ground that the two year statute of limitations in the Ohio blue sky law barred the cause of action.[2] Plaintiffs appeal from that order.

Neither § 10(b) of the 1934 Act, nor § 17(a) of the 1933 Act contains a period of limitations, and there is no general federal statute of limitations. Accordingly, we held in a § 10(b) case that " '[T]he Federal Courts must choose among the several state statutes of limitations and apply that one which best effectuates the federal policy at issue.' " *IDS Progressive Fund, Inc. v. First of Michigan Corp.*, 533 F.2d 340, 342 (6th Cir. 1976), *quoting Charney v. Thomas*, 372 F.2d 97, 100 (6th Cir. 1967). This view was approved recently by the Supreme Court in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 210, n.29, 96 S.Ct. 1375, 1389, 47 L.Ed.2d 668 (1976):

> Since no statute of limitations is provided for civil actions under § 10(b), the law of limitations of the forum state is followed as in other cases of judicially implied remedies. *See Holmberg v. Armbrecht*, 327 U.S. 392, 395 [66 S.Ct. 582, 584, 90 L.Ed. 743] (1946), and cases cited therein.

The question whether the *Ohio* blue sky period of limitations or fraud period would

better implement the federal policies underlying Rule 10b–5 and §§ 10(b) and 17(a) has not previously been considered by our court. However, in *Connelly v. Balkwill*, 279 F.2d 685 (6th Cir. 1960), we affirmed, without discussion, a determination by the District Court for the Northern District of Ohio that the four year fraud period should be applied in preference to the six year limitation period for actions based upon a liability created by statute, Ohio Rev. Code 2305.07. The two year blue sky limitation period was not considered. The district court opinion, reported at 174 F.Supp. 49 (N.D. Ohio 1959), focused on the fact that § 10(b) and Rule 10b–5 did not create a new kind of liability, but rather incorporated into statute and rule the common law fraud action. Accordingly, the court applied the six year fraud limitation. It did not discuss the applicability of Ohio Rev. Code 1707.43, the two year blue sky limitation. The district court also discussed the resemblance between the Ohio law of fraud and 10b–5 in connection with the defendants' claim that res judicata barred the 10b–5 action because plaintiffs had already been denied recovery in a state fraud action. The court held that "this [10b–5] case is based on a cause of action no different from the cause of action upon which plaintiffs sought recovery in the previous [fraud] action." It found that

> Ohio must be assigned a place among those "more enlightened jurisdictions" where *the duty to disclose material facts is as broad and exacting as the duty of disclosure defined by Rule X 10b–5.* 174 F.Supp. 60. [Emphasis added.]

Then, in *Charney v. Thomas*, 372 F.2d 97 (6th Cir. 1967) we were presented with a choice between applying the six year Michi-

---

2. The district judge distinguished *Toledo Trust Co. v. Nye*, 392 F.Supp. 484 (W.D. Ohio, N.Div., Mem. Opinion, 1975), in which another judge from the Northern District of Ohio applied the four year limitation period following *Charney, et al.* The *Nickels* court held that *Toledo Trust* was distinguishable because there the plaintiff was the personal representative of a deceased seller of securities. Since Ohio's blue sky law provided no remedy for a defrauded seller, his only remedy under state law was an action for fraud. Accordingly, the fraud action might

more closely resemble *his* suit. Moreover, since the action was filed only two years and five days after the discovery of the fraud, the district judge in *Nickels* viewed the *Toledo Trust* case "as an application of the 'flexibility' commanded by *Affiliated Ute Citizens*, [406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741] *supra*, and the equity notions . . . which lie at the heart of a federal court's use of a state statute of limitations in an action where the rights and liabilities are created by federal law."

gan limitation for general fraud and the two year limitation in the state blue sky law. The plaintiff alleged fraudulent misrepresentation in violation of § 10 of the 1934 Act. We held that the six year limitation for fraud would best promote federal policy because the Michigan statute did not contain a provision similar to 10(b).

Most recently in *IDS Progressive Fund, Inc. v. First of Michigan Corp.,* 533 F.2d 340 (6th Cir. 1976), we rejected the contention that we ought to apply the new Michigan blue sky limitation contained in the Uniform Securities Act, which was adopted in place of the earlier blue sky law considered in *Charney.* We held that "[f]or us to change the applicable limitation period without good cause would add an unnecessary uncertainty to the prosecution of federal claims under Section 10(b)." 533 F.2d 343. Additionally, we observed that " 'the broad remedial purposes of the federal securities laws are best served by a longer, not a shorter statute of limitations.' " 533 F.2d 344, *quoting United California Bank v. Salik,* 481 F.2d 1012 (9th Cir.), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973).

Although we have not applied a state blue sky limitation in any of the cases before us, we are aware that other circuits have applied similar blue sky limitations periods in fraud cases based upon 10b–5, and sections 10(b) and 17(a). *Newman v. Prior,* 518 F.2d 97 (4th Cir. 1975), *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996 (5th Cir. 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975), *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir. 1972), *Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir. 1970), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). In each of these cases, the court determined that the state blue sky law closely resembled the federal securities provisions. For example, in *Parrent,* the Seventh Circuit observed that the state blue sky law had a purpose similar to the 10b–5's purpose "of protecting the 'uninformed, the ignorant, the gullible.' " 455 F.2d 126. The court determined, "Except for the inter-

state elements in 10b–5, *Section 12 of the Illinois Securities Law . . . covers the same violations as 10b–5.*" 455 F.2d 127. [Emphasis added.] The court found it important that section 137.12 "so closely parallels 10b–5," and it concluded that the adoption of this section would best effectuate the federal policies in the suit. Similarly, in *Hudak,* the Fifth Circuit observed that "the present hesitant growth of the Florida blue sky law accurately tracks the development of federal securities regulation in this Circuit." 499 F.2d 1000. Most recently in *Newman* the court found that "[b]oth the state statute and [617(a)] proscribe the same conduct." 518 F.2d 100.

■ The defendants in this consolidated appeal present several arguments for the application of periods of limitation that would bar plaintiffs' claims. First, they urge that we should fashion a uniform statute of limitations of one year from discovery, up to a maximum of three years, based upon the sections of the 1933 and 1934 Acts that create express liabilities with stated periods of limitations. 15 U.S.C. §§ 77m, 78i(e), 78r(c), and 78cc(b). They contend that a uniform federal standard is essential to prevent confusion and uncertainty. We decline, as we did in *IDS Progressive,* to overrule our precedents fashioning the federal limitation period in 10b–5 actions after the state limitation that will best effectuate federal policy. Although a uniform federal period of limitation would prevent the anomaly of applying different limitations periods to plaintiffs who purchased or sold the same security but resided in different states, a single circuit cannot impose a pattern on the entire nation. Each circuit that has considered the question to date has applied a state period of limitation. Accordingly, at this late hour only the Congress or the Supreme Court can impose uniformity. Neither has promulgated a federal limitation period, and the Supreme Court recently observed that "since no statute of limitations is provided under § 10(b), the law of the forum state is followed as in other cases of judicially implied remedies." *Ernst & Ernst,* 425 U.S. 210, n.29, 96 S.Ct. 1389. More-

over, the *Ernst* opinion provides no support for defendants' contention that a one year from discovery federal limitation period is necessary because longer state limitations contravene federal policy. The *Ernst* opinion observed, without disapproval:

Although it is not always certain which state statute of limitations should be followed, such statutes of limitations usually are longer than the period provided under § 13.3 L. Loss, *supra*, at 1773–1774. 425 U.S. 210, n.29, 96 S.Ct. 1389.

Alternatively, defendants urge that if state law is to be applied, the shorter two year blue sky statute of limitations will best promote federal policies. In support of this claim, they present two arguments. In determining which state limitations period will best promote federal policies, the courts have tried to determine which state statute "bears the closest resemblance to the federal statute involved." *Vanderboom v. Sexton*, 422 F.2d 1237–1238. The defendants' first contention is that each of the state law causes of action that resembles the federal cause of action here—both blue sky *and* state common law securities fraud—is governed by the two year limitation in the blue sky statute. In the alternative, they contend that even if a state action for common law securities fraud is governed by the longer fraud limitation period, the blue sky cause of action resembles the 10b–5 cause of action more closely than does the state common law action for fraud.

Evaluation of these two arguments requires a close examination of the provisions of the blue sky statute. Section 1707.43 is the general section creating the purchaser's remedies for an unlawful securities sale. It includes a two year limitation period. It provides:

*Every sale or contract for sale made in violation of sections 1707.01 to 1707.45,* inclusive, of the Revised Code, is voidable at the election of the purchaser. The person making such sale or contract for sale, and every person who has participated in or aided the seller in any way in making such sale or contract for sale, are

jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract made, for the full amount paid by such purchaser and for all taxable court costs, unless the court determines that the violation did not materially affect the protection contemplated by the violated provision.

*No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of sections 1707.01 to 1707.45,* inclusive, of the Revised Code, *whether based upon contract or tort, and whether legal or equitable in nature, shall be brought after two years from the date of such sale or contract for sale.* [Emphasis added.]

Plaintiffs argue first that the language of 1707.43, read in conjunction with 1707.40, establishes that the Ohio legislature intended the two year limitation period to apply to *all* causes of action based upon fraud in the sale of securities. Section 1707.40 provides:

Sections 1707.01 to 1707.45, inclusive, of the Revised Code create no new civil liabilities, and do not limit or restrict common law liabilities for deception or fraud other than as specified in sections 1707.41, 1707.42, and 1707.43 of the Revised Code, and there shall be no civil liabilities for noncompliance with orders, requirements, rules, or regulations made by the division of securities under sections 1707.19, 1707.-20, and 1707.23 of the Revised Code.

They emphasize the statement in 1707.40 that the blue sky provisions "do not limit or restrict common law liability for deception or fraud *other than as specified in section . . . 1707.43 . . . .*" [Emphasis added.] Accordingly, they reason that the two year limitation contained in 1707.43 *does* "limit or restrict common law liability for deception or fraud." This interpretation is supported by 1707.43, which makes

the two year limit applicable to any action for

recovery based upon or arising out of a sale or contract for sale made in violation of sections 1707.01 to 1707.45, inclusive, of the Revised Code, whether based upon contract or tort, and whether legal or equitable in nature . . .. [Emphasis added.]

■ However, we do not agree that the two year limitation period in § 1707.43 was intended to apply to all cases of securities law fraud, including those based solely upon the common law of fraud. At the outset, we observe that the two other sections of the blue sky provisions creating liability have their own limitations periods. Ohio Rev. Code 1707.41 (liability of director of seller corporation, two years), Ohio Rev. Code 1707.42 (liability of advisor to seller, one year). But of greater significance is the fact that the Ohio legislature intended 1707.43 to be given a common sense interpretation. It applies to cases where the plaintiff claims that his recovery is "based upon" or "aris[es] out of" a violation of the blue sky provisions, whether the theory of damages is contract or tort, at law or equity. But 1707.43 was not, we believe, intended to apply to actions in which the plaintiff does not expressly "base [his claim] upon" and does not contend that it "aris[es] out of" the blue sky law. And although plaintiffs argue that any sale that would constitute common law fraud would also violate the blue sky provisions, we have no authoritative construction by the Ohio courts that their blue sky law is intended to be co-extensive with their common law of fraud. As our discussion below will demonstrate, we do not view the common law of fraud and the blue sky provisions as identical.

This brings us to consideration of defendants' final argument, that the federal period of limitations should be the same as the two year blue sky limitation because the federal action more closely resembles the cause of action created by the blue sky statute. Accordingly, they contend that a two year statute of limitations will best promote federal policy.

It is difficult to determine whether the federal cause of action more closely resembles the action for common law fraud or the action created by the blue sky statute because the federal action has elements common to both, and also has features possessed by neither.

One difference is immediately apparent. The blue sky law provides a remedy only for a defrauded purchaser, and not for a defrauded seller. On the other hand, the action for common law fraud and the federal cause of action afford a remedy for a defrauded seller as well.

The Ohio blue sky statute, its common law action for fraud, and 10b–5 also differ in their treatment of reliance and scienter. The blue sky statute affords two contrasting remedies. Rescission is available for intentional misrepresentation without a showing of reliance, but otherwise damages can be recovered only where there has been reliance, although the element of intent has been relaxed to a degree. In fraud cases the Ohio courts have uniformly required a showing of reliance, although recklessness is treated as the equivalent of intent. Finally, in 10b–5 actions the Supreme Court has held that negligence is not actionable, has left open the question whether a showing of recklessness will meet the intent requirement, and has relaxed the requirement of reliance at least in instances of fraudulent nondisclosure.

The broad remedy provision in the blue sky statute provides that "[e]very sale or contract of sale made in violation of 1707.01 to 1707.45, inclusive, of the Revised Code, is voidable at the election of the purchaser." This provision, in conjunction with 1707.-44(B), which forbids knowing false representations of a material and relevant fact for the purpose of selling securities in Ohio, requires intent of the seller to defraud, but does not require a showing of reliance by the buyer. The separate action establishing the seller's liability for written misrepresentations, in contrast, requires reliance on the part of the purchaser, and either knowledge of the falsity of a representation or lack of

diligence in ascertaining its truth or falsity on the part of the seller. 1707.41.

In contrast, in common law suits the Ohio courts have uniformly required a defrauded party to show his reliance on the challenged representation. *E. g., Block v. Block*, 165 Ohio St. 365, 135 N.E.2d 857 (1956), 24 *Ohio Jur.* 2d § 125, and cases cited. But Ohio does not require the plaintiff in a fraud action to show that the defendant knowingly made the misrepresentation upon which plaintiff relied. It is sufficient if a false representation was "made recklessly and without any knowledge or information on the subject calculated to induce such belief." *Beamer v. Feick*, 113 Ohio App. 264, 177 N.E.2d 691 (1960).

In a recent 10b–5 suit the Supreme Court qualified the requirement of reliance. In *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972) the Supreme Court held that where failure to disclose was involved, proof of reliance was not a prerequisite to recovery; "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision."

With regard to intent, our circuit held in *SEC v. Coffey*, 493 F.2d 1304, 1317 (6th Cir. 1974) that "section 10b of the 1934 Act does not impose liability for innocent acts but only for acts of fraud or deceit." This position was recently reaffirmed by the Supreme Court in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), where the Court held that an action will not lie under § 10(b) and Rule 10b–5 "in the absence of any allegation of 'scienter'—intent to deceive, manipulate, or defraud." [Footnote omitted.] The Court expressly left open the question whether reckless behavior is sufficient to create liability under 10b–5. 425 U.S. 194, n.12, 96 S.Ct. 1375.

Turning to the measure of damages, we find that each of the three causes of action may permit a slightly different measure of recovery. The blue sky statute contains two applicable remedy provisions.[3] The general remedy section, 1707.43, provides for the buyer's recovery of the purchase price (plus costs) if he tenders the securities back to the seller and the sale is rescinded. In addition, 1707.41 permits the buyer who relied on a written misrepresentation to recover the "damages sustained" due to his reliance on the false representations.

In contrast, the Ohio courts have held that "the difference in value between the way the property was represented to be and the way it actually was at the time of the sale" is the proper measure of damages where the sale has been induced by fraud. *Wilchins v. Pool*, 29 Ohio App.2d 223, 224, 280 N.E.2d 396, 398 (1971), *citing Molnar v. Beriswell*, 122 Ohio St. 348, 171 N.E. 593 (1930).

Finally, with regard to damages in a 10b–5 suit in the *Affiliated Ute* case the Supreme Court stated:

In our view, the correct measure of damages under § 28 of the Act, 15 U.S.C. § 78bb(a), is the difference between the fair value of all that the . . . seller received and the fair value of what he would have received had there been no fraudulent conduct, see *Myzel v. Fields*, 386 F.2d 718, 748 (CA8 1967), cert. denied, 390 U.S. 951 [88 S.Ct. 1043, 19 L.Ed.2d 1143] (1968), except for the situation where the defendant received more than the seller's actual loss. In the latter case damages are the amount of the defendant's profit. See *Janigan v. Taylor*, 344 F.2d 781, 786 (CA1 1965), cert. denied, 382 U.S. 879 [86 S.Ct. 163, 15 L.Ed.2d 120] (1965).

406 U.S. 155, 92 S.Ct. 1473.

In *Janigan* the circuit court distinguished between the measure of damages for a defrauded seller and a defrauded buyer:

. . . We turn to the remedy. With respect to damages we draw a distinction between cases where, by fraud, one is caused to buy something that one would not have bought or would not have

---

**3.** In addition, 1707.41 provides for the liability of the director of the seller corporation, and 1707.42 provides for the liability of an advisor to the seller.

bought at that price, and where, by fraud one is induced to convey property to the fraudulent party. In the former case the damages are to be reckoned solely by "the difference between the real value of the property at the date of its sale to the plaintiffs and the price paid for it, with interest from that date, and, in addition, such outlays as were legitimately attributable to the defendant's conduct, but not damages covering 'the expected fruits of an unrealized speculation.'" *Sigafus v. Porter*, 1900, 179 U.S. 116, 125, 21 S.Ct. 34, 37, 45 L.Ed. 113. See *Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 10 Cir., 1962, 303 F.2d 527, 533; Securities Exchange Act of 1934, 15 U.S.C. § 78bb; 3 Loss, Securities Regulation, p. 1793 (2d ed. 1961). On the other hand, if the property is not bought from, but sold to the fraudulent party, future accretions not foreseeable at the time of the transfer even on the true facts, and hence speculative, are subject to another factor, viz., that they accrued to the fraudulent party. It may, as in the case at bar, be entirely speculative whether, had plaintiffs not sold, the series of fortunate occurrences would have happened in the same way, and to their same profit. However, there can be no speculation but that the defendant actually made the profit and, once it is found that he acquired the property by fraud, that the profit was the proximate consequence of the fraud, whether foreseeable or not. It is more appropriate to give the defrauded party the benefit even of windfalls than to let the fraudulent party keep them. 344 F.2d 786. [Footnotes omitted.]

This discussion suffices to make it clear that both the Ohio common law of fraud and its blue sky statute bear a marked resemblance to 10b–5, but neither is identical with it. We conclude that the common law of fraud is sufficiently similar to the case law developing under § 10(b) and Rule 10b–5 that federal policy will be best served by the *continued* application of the four year limitation period that we approved in *Connelly v. Balkwill, supra.* In

*IDS Progressive* we held that we should not change the limitation period applicable to 10b–5 actions without "good cause" because to do otherwise adds "unnecessary uncertainty to the prosecution of federal claims under Section 10b–5." 533 F.2d 343. Moreover, we observed that the broad remedial purposes of the federal securities acts are "best served by a longer, not a shorter statute of limitations." 533 F.2d 344. Applying these two principles to the case before us we hold that the four year fraud statute of limitations, upon which the parties may have relied, is applicable.

Accordingly, the judgment of the district court in *McIntyre* will be affirmed, and the judgment of the district court in *Nickels* will be reversed, and both cases are remanded for further proceedings consistent with this opinion.