Harold KELLMAN, individually, Harold Kellman, Trustee for Barbara Kellman, Ira Kellman and Stewart Kellman, Plaintiffs-Appellants,

v.

ICS, INC., a dissolved Michigan corporation, Information Control Systems, Inc., a Delaware corporation, et al., Defendants-Appellees.

No. 21046.

United States Court of Appeals, Sixth Circuit.

Sept. 7, 1971.

1. See NLRB v. Amalgamated Clothing Workers of America, 5th Cir. 1970, 430 F.2d 966.

———◆———

Wallace Glendening, Detroit, Mich., for plaintiffs-appellants; Jaffe, Snider, Raitt, Garratt & Heuer by C. William Garratt, Detroit, Mich., on brief.

James C. Bruno, Detroit, Mich., for defendants-appellees; Elsman, Young & O'Rourke by John D. Ketelhut, Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, and McCREE and MILLER, Circuit Judges.

PHILLIPS, Chief Judge.

The issue in this case is whether plaintiffs have stated a claim upon which relief can be granted under the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., or the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. We agree with the District Court that no such claim is stated and affirm the dismissal of the complaint.

The original plaintiffs in this action were Harold Kellman as trustee for Barbara Kellman, Ira Kellman, and Stewart Kellman; Ann Kellman; Elliel G. Redstone and Daniel Redstone; and V.S.D. Clothing Co., Inc. Subsequently, Harold Kellman was added individually as a party plaintiff and all of the remaining plaintiffs except Harold Kellman as trustee were dismissed from the suit upon settlement of their claims.

On June 28, 1968, Harold Kellman as trustee for Barbara, Ira and Stewart Kellman purchased a total of 100 shares of common stock of Information Control Systems, Inc., a Michigan corporation (Information Control Systems, Inc. subsequently changed its name to ISC, Inc. This corporation will be referred to hereinafter as the "Michigan Corporation."). In addition, Harold Kellman as an individual had acquired in various transactions a total 1,071.199 shares of the Michigan Corporation. Some of the shares were acquired as compensation for services, and others in exchange for cash and his services. The value of those services is unliquidated and is a matter of considerable dispute among the parties.

Some time after Harold Kellman acquired his stock in the Michigan Corporation, the majority shareholders of the corporation decided to reorganize and recapitalize the business. The principal factor precipitating their decision is not clear. It appears that during this period someone connected with the Michigan Corporation began to suspect that there had been a violation of the Michigan Blue Sky Laws at the time the corporation originally was organized.

If such a violation has occurred, Michigan Blue Sky Law [1] permits the seller

---

1. Section 410 of the Michigan Blue Sky Law, Mich.Stat.Ann. § 19.776 (Cum. Supp.1971), M.C.L.A. § 451.810 provides (in part):

"(a) Any person who:
 * * * * *

"(2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

"Is liable to the person buying the security from him, who may sue either at law or in equity to recover the con-

sideration paid for the security, together with interest at 6% per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at 6% per year from the date of disposition.
 * * * * *

"(e) No person may sue under this section more than 2 years after the contract of sale. No person may sue under this section (1) if the buyer received a written offer, before suit and at a time when he owned the security, to refund the consideration paid together with interest at 6% per year

of the stock to limit his liability by offering to refund the consideration paid for the stock plus interest at six per cent per year from the date of sale.

In any event the plan adopted by the majority shareholders called for dissolution of the Michigan Corporation and an offer to refund to each shareholder the consideration paid by him for the shares plus interest. The plan further called for the organization of a Delaware corporation named Information Control Systems, Inc. (hereinafter referred to as the Delaware Corporation) to carry on the business previously conducted by the Michigan Corporation. Shares in the Delaware Corporation were to be issued and sold pursuant to a public offering under the Federal Securities Laws. If the shareholders of the Michigan Corporation did not accept the offer of a refund of the consideration paid by them for their stock, they would automatically receive stock in the Delaware Corporation at a "one for one" exchange rate.

These alternatives were put to plaintiffs in a letter dated August 12, 1969. The letter read as follows:

"TO PURCHASERS OF SHARES OF COMMON STOCK FROM INFORMATION CONTROL SYSTEMS, INC., A MICHIGAN CORPORATION

"Gentlemen:

"The sale to you by Information Control Systems, Inc., a Michigan corporation, (now ICS, Inc.), of its shares of common stock, $1 par value, may have been in violation of Section 301 of the Uniform Securities Act of the State of Michigan (Act 265 of the Public Acts of 1964). A copy of Section 410 of the Uniform Securities Act which governs civil liabilities under that Act is attached.

"ICS, Inc. hereby offers to rescind the sale and to take back the shares of common stock of Information Control Systems, Inc., a Michigan corporation (now ICS, Inc.) sold to you by it and to refund to you the consideration paid by you to it together with interest at 6% per year from the date of payment, less the amount of any income received on the common stock.

"Those stockholders who do not accept the recission offer will become a stockholder of Information Control Systems, Inc., a Delaware corporation. A copy of a Preliminary Prospectus dated July 10, 1969 of that corporation is enclosed.

"You may accept or refuse this offer in writing within the later of thirty days after receipt of this offer by you or forty-eight hours after receipt of a final Prospectus of Information Control Systems, Inc., a Delaware corporation, relating to the offering of shares of common stock of that corporation to stockholders of ICS, Inc.

"Very truly yours,
"ICS, INC.
"David Carlson, President

"[x] I wish to return the securities and obtain a refund as mentioned above.

"[ ] I wish to retain the securities and do not wish to obtain the refund mentioned above.

*"Sept. 4, 1969*
/s/ *Harold Kellman, Trust.*
Signature of Purchaser

"/s/ Barbara Kellman"

Plaintiffs decided to return the shares and obtain the refund, and they exercised their decision by signing the August 12, 1969, letter and returning it on September 4, 1969, as indicated above. Thereafter a dispute arose concerning the value of the consideration paid by Harold Kellman for his shares, since part of that consideration was unliquidated services rendered to the company. When that

from the date of payment, less the amount of any income received on the security, and he failed to accept the offer within 30 days of its receipt, or (2) if the buyer received such an offer before suit and at a time when he did not own the security, unless he rejected the offer in writing within 30 days of its receipt."

dispute was not resolved, this suit followed.

The issue on this appeal revolves around the sufficiency of the complaint to state a claim under (I) § 17 of the 1933 Act, 15 U.S.C. § 77q, or (II) § 10 (b) of the 1934 Act, 15 U.S.C. § 78j. The original complaint also contained a count based on breach of contract with federal jurisdiction of that count pendent on the Securities Act count.

In addition to the statement of facts outlined above, the complaint contained the following allegations concerning fraud:

"7. That the aforesaid [letter of August 12, 1969] was material to the exercise of investment decisions regarding the common stock of both THE MICHIGAN CORPORATION and THE DELAWARE CORPORATION.

\* \* \* \* \* \*

"9. That the aforesaid ['Preliminary Prospectus'] was material to the exercise of investment decisions regarding the common stock of both THE MICHIGAN CORPORATION and THE DELAWARE CORPORATION.

\* \* \* \* \* \*

"13. That in reliance upon the representations contained in the letter of August 12, 1969 and the 'Preliminary Prospectus' of July 10, 1969, the above-named plaintiffs made timely written acceptance of the rescission offer of August 12.

\* \* \* \* \* \*

"16. That the material representations made in the letter of August 12th and the 'Preliminary Prospectus' of July 10th are, and at the time made, were false and/or misleading.

' "17. That the letter of August 12th and the 'Preliminary Prospectus' of July 10th, omitted material facts necessary to make the statements made therein not misleading.

"18. That at the time the defendants made the aforementioned representations and omissions, they, and each of them, knew or should have known that said material representa-

tions and omissions were false or misleading.

"18. That the individual defendants, by virtue of the aforementioned control relationship to the defendant corporations, jointly and severally, undertook and caused the defendant corporations to undertake, individually, a practice and course of business conduct which operated as a fraud and/or deceit upon the plaintiffs, and each of them.

"19. That the individual defendants, by virtue of the aforementioned control relationship to the defendant corporations, jointly and severally, undertook and caused the defendant corporations to undertake, individually, and employ the aforesaid devices in a scheme to defraud the plaintiffs, and each of them."

Two amendments to the original complaint also were filed and considered, but they dealt primarily with the parties and did not affect the substance of the claims for relief.

I

■ Section 17 of the 1933 Act makes it unlawful for any person to employ any fraudulent means in the "offer or sale of any securities," 15 U.S.C. § 77q. However, as this Court recently held in Simmons v. Wolfson, 428 F.2d 455 (6th Cir.), cert. denied, 400 U.S. 999, 91 S.Ct. 459, 27 L.Ed.2d 450 "[o]nly purchasers have standing to sue for violation of the 1933 Act." *Id.* at 456.

In the present case, plaintiffs' only allegation of fraud was in connection with the August 12, 1969, letter and accompanying prospectus. The record does not show that plaintiffs purchased any stock in the Michigan Corporation on or after that date. Thus at the time they received the letter they already owned all their shares in the Michigan Corporation. Their ownership of that stock inherently would make them "purchasers" in the sense that at some point in time they would have had to acquire the stock. However, their ownership of the stock

does not make them "purchasers" within the purview of § 17 of the 1933 Act since their "purchases" occurred prior to the alleged fraud of which they complain. We hold that since their acquisition could not have been as a consequence of the alleged fraud, it is impossible for them to be within the class of "purchasers" which the section was designed to protect and that they therefore do not have standing under § 17.

Plaintiffs attempt to avoid this outcome by alleging in the complaint that their "investment decision" was in reliance on the August 12, 1969, letter and the accompanying prospectus. However, that decision was not to sell, rather than a decision to buy, the latter of which would have made them "purchasers" but the former of which did not.

## II

■ The District Court also dismissed the complaint for failure to state a claim upon which relief could be granted under § 10(b) of the 1934 Act. Section 10(b), 15 U.S.C. § 78j, reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

This section covers sellers as well as purchasers. Defendant contends that plaintiffs were neither sellers nor purchasers since the August 12, 1969, letter involved only a rescission of a previous sale. They argue that when plaintiffs accepted the offer to rescind the earlier sale, the parties were merely put in *status quo ante*. In view of the manner in which we dispose of the remainder of this case, we are not required to rule on defendants' contention. For our purposes we can assume, without deciding, that whether the transaction is termed a "rescission" of an earlier sale or a "contract" to sell is of no significance under the securities laws. Based upon the above-stated assumption, defendants have consummated a purchase, and if they used fraud "in connection with" the purchase, plaintiffs as sellers would have a claim upon which relief could be granted. The central element of plaintiffs' claim in such a case would be the fraud "in connection with" the purchase.

General allegations of fraud are not sufficient. Rule 9(b) of the Fed.R.Civ. P. requires that: "(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

■ A perusal of the complaint makes it clear that plaintiffs have not complied with rule 9(b). They do not state what portions of the letter or prospectus are false or constitute "half truths" nor have they ever stated how they were defrauded in any specific respects. Their primary complaint is that defendants have failed to fulfill their contract obligation, but breach of contract does not necessarily support a claim under the Federal Securities Laws. Seward v. Hammond, 8 F.R.D. 457 (D.Mass.). The only possible damage seems to be court costs and attorneys' fees.

Such tactical considerations, even coupled with a complaint that is adequate *pro forma*, do not require this court to blind itself to the failure of plaintiffs to allege any particulars of the alleged fraud.

District Judge Theodore Levin questioned counsel for plaintiffs extensively during the hearing on the motion to dismiss about the specifics of the alleged fraud, the details of how plaintiffs had

been damaged and the substance of the Securities Acts violations:

"THE COURT: * * * I want to know what your position is.

"MR. LIFTON: First of all I would like to say we are not willing to concede that there was an offer of rescission.

"THE COURT: Suppose it isn't, you're getting back your money and you are satisfied with that.

"MR. LIFTON: No.

"THE COURT: What do you want?

"MR. LIFTON: As a result of the defendants' failure to live up to their obligations, our clients sustained certain damages which we are prepared to present evidence of at the proper time.

"THE COURT: What damages?

"MR. LIFTON: It was only after—

"THE COURT: (Interposing) Weren't you offered the money and didn't you agree to rescission?

"MR. LIFTON: We didn't agree to rescission.

"THE COURT: There is a paper in here indicating that you did. It's marked—

"MR. LIFTON: (Interposing) I am not willing to concede that this was an offer of rescission.

"THE COURT: But you accepted it as—

"MR. LIFTON (Interposing) We accepted the offer—

"THE COURT: (Interposing)—of the rescission

"MR. LIFTON (Continuing)—to exchange our shares of stock for a promise of money. That money never came through. We were forced to initiate an action in this court. It was only after the action was initiated in this court that the defendants finally agreed—finally indicated that they were prepared to follow through with that offer. It was only after an action was initiated."

Counsel was put on notice that the court was concerned with the propriety of the complaint and its sufficiency under Rule 9(b), but no offer was ever made to explain the general allegations of fraud.

We agree with Professor Wright that "a complaint lacking such particulars is properly subject to dismissal. This is desirable in order to prevent irresponsible and improvident aspersions and charges of fraud." 1A Barron & Holtzoff, Federal Practice & Procedure § 302 at 225 (Wright ed. 1960).

Since details of the alleged fraud were never offered in an amended complaint even though two amendments were made, and since counsel was put on notice of the need for these details, we hold that the District Judge was correct in dismissing the complaint for failure to state a claim upon which relief could be granted. *Cf.* Davis v. State Bank of Woodstock, 151 F.2d 180 (7th Cir.). Counsel had the opportunity to correct the insufficient complaint by amending to add details, but he never took advantage of that opportunity. Hence, because of rule 9(b), the complaint stood as if the essential allegation of fraud had never been made.

All other points raised by appellants have been considered and are deemed to be without merit.

In summary, we read the complaint as stating a cause of action based upon alleged breach of contract which plaintiffs have undertaken to bring within the scope of the Federal Securities Laws by broad averments of fraud without any specificity. We consider this undertaking to be without merit in view of the purpose of the Securities Acts and the existence of a State court remedy if plaintiff can prove the facts alleged.

The judgment of the District Court is affirmed. Our decision is without prejudice to the right of plaintiffs to prosecute their contract action in any State court which might have jurisdiction over such a claim.