**MEDIA GENERAL, INC., Plaintiff,**

v.

**William B. TANNER; Earl J. Funk; Louis R. Lucas; Canale, Mitchell, Lucas & Watson; Canale, Lucas, Watson, McLean & Chinn; Robert S. Brown; Brown, Cummins & Brown Co., LPA; First Tennessee Bank, Defendants.**

No. 84–2212–MA.

United States District Court, W.D. Tennessee, W.D.

Nov. 13, 1985.

Thomas R. Prewitt, Edward M. Kaplan, Daniel P. Jaffe, Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., for plaintiff.

Peter Van N. Lockwood, Graeme W. Bush, Scott D. Michel, Caplin & Drysdale (Chartered), Washington, D.C., James F. Neal, Thomas H. Dundon, Neal & Harwell, Nashville, Tenn., for William B. Tanner.

Joe Duncan, Memphis, Tenn., for First Tenn. Bank, N.A.

Jef Feibelman, Burch, Porter & Johnson and Richard Glassman, Memphis, Tenn., for Louis R. Lucas.

Kemper B. Durand, Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard & Adams, Memphis, Tenn., Mark A. Vander, Laan, Lawrence A. Kane, Jr., Cincinnati, Ohio, Philip P. Durand, Ambrose, Wilson & Grimm, Knoxville, Tenn., for Robert S. Brown and Brown, Cummins & Brown Co., L.P.A.

Albert T. McRae, John W. Leach, Fred Wilson, Wilson, McRae, Ivy, Sevier, McTyier & Strain, Memphis, Tenn., for Canale, Mitchell, Lucas & Watson and Canale, Lucas, Watson, McLean & Chinn.

James D. Causey, Memphis, Tenn., for Earl J. Funk.

## ORDER ON PENDING MOTIONS

McRAE, Chief Judge.

Plaintiff, Media General, Inc. (Media General), a Virginia corporation, brought this action seeking a declaratory judgment, monetary awards to compensate for damages allegedly suffered, treble and punitive damages, an award of costs and attorney fees, the establishment of a constructive trust and such other relief as this Court deems just. In support of its demands for relief, Media General alleges violations of Section 17(a) of the 1933 Securities Act, Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder, the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961 *et seq.*, and seeks a declaration under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. In addition, Media General alleges that various defendants committed fraud under the common law of Tennessee, violated T.C.A. Section 48–2–121 of Tennessee Blue Sky Law, negligently misrepresented facts and breached a contract between several defendants and Media General.

Presently pending before the Court are five motions to dismiss various claims or counts of the complaint for failure to state claims upon which relief can be granted. Additionally, several ancillary motions are currently pending.

The motions are filed in behalf of the defendants William B. Tanner (Tanner); Robert S. Brown (Brown), Brown, Cummins & Brown Co., L.P.A. (BCB); Canale, Mitchell, Lucas & Watson and Canale, Lucas, Watson, McLean & Chinn (collectively the Lucas firm); Louis R. Lucas, individually (Lucas); and Earl J. Funk (Funk).

The pending motions will be considered primarily by reference to the alleged substantive law violations from which defendants move for dismissal.

## RICO CLAIMS

Media General's complaint alleges that the defendants have by various means committed violations of RICO. The factual allegations made in the complaint which are relevant to Media General's RICO claims are summarized below.

In 1981, Media General entered into negotiations with defendants Tanner, Lucas and Funk for the purchase of about 91% of the stock of William B. Tanner Co., Inc., later renamed Media General Broadcast Services, Inc., (the Company). At the time of the negotiations, Tanner individually owned substantially all of the stock of the Company and served as its chief executive officer and director; Funk owned some stock in the Company, served as a director and an officer, and Lucas owned some stock, served as director and officer of the Company. By virtue of his status as a trustee, Lucas also had record title to certain other Company stock.

At all times during the negotiations, the Lucas firm represented Tanner, Funk and Lucas and the Company in connection with the preparation, execution and delivery of an agreement providing for the purchase of stock in the Company by plaintiff Media General (the Purchase Agreement). At the same time, defendants Brown and BCB assisted the Lucas firm with the preparation, execution, and delivery of the Purchase Agreement and the sale of stock.

Media General alleges that to induce it into entering into the Purchase Agreement, Tanner, Funk, Lucas, and the Lucas firm made representations and warranties upon which Media General relied in deciding to enter into the Purchase Agreement and without which Media General would not have entered into the Purchase Agreement. These representations allegedly were either false or failed to disclose material facts.

Under the terms of the Purchase Agreement, Media General paid defendants Tan-

ner, Lucas and Funk thirty-six million dollars, and the Company was to redeem from Tanner an additional number of shares. Also, upon the occurrence of certain triggering events based upon the future earnings of the Company, defendants Tanner, Funk and Lucas were to receive additional payments (additional payments). In case the events did not occur, no additional payments would become due.

Defendants Brown and BCB allegedly knew or recklessly disregarded the fact that some of the representations were false and misleading and participated in and benefited from the scheme to defraud Media General.

The Lucas firm allegedly knew that the warranties and representations made were false and misleading and part of a scheme to defraud Media General and was an active participant in the scheme to defraud Media General.

Based on the foregoing, Media General has asserted claims against the defendants under various provisions of the civil portions of RICO, 18 U.S.C. § 1961, *et seq.* Pending before the Court are motions by: (A) defendants Tanner, Funk and Lucas to dismiss claim 3 of Count I and claims 1 through 5 of Count II; (B) defendants Brown and BCB to dismiss claim 2 of Count IV; and (C) defendant Lucas firm to dismiss claim 2 of Count III.

In support of their motions, defendants present several arguments. First, defendants argue that shareholders cannot as a matter of law conduct or participate in the affairs of an enterprise when the shareholder sells his entire interest in the enterprise; second, that plaintiff has failed to allege a RICO-type injury—an injury different in kind from that occurring as a result of the alleged predicate acts of fraud in the sale of the Company; third, that plaintiff's RICO allegations are premature because none of the defendants have been convicted of a predicate offense; fourth, that plaintiff has alleged no pattern of racketeering activity in connection with its purchase of the Tanner Company; fifth, that plaintiff has failed to adequately allege the existence of a person-enterprise relationship; and finally sixth, that plaintiff lacks standing to recover the business and property damages that were allegedly incurred.

Defendants' contention that a shareholder does not conduct or participate in the affairs of an enterprise when he sells his interest in the enterprise is based upon the text of the RICO statute and several judicial opinions construing it. Neither the test of § 1962(c) nor the legislative history cited by defendants contain any express limitation barring any RICO claim when the "pattern of racketeering activity" includes fraud by the seller of securities which represent the seller's entire interest in the "enterprise." Title 18 U.S.C. § 1962(c) makes it unlawful:

"for any person employed by or associated with any enterprise engaged in or the activities of which affect, interstate or foreign commerce, to conduct or participate directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

Media General alleges that through "a pattern of racketeering activity," defendants Tanner, Lucas, Funk and the Lucas firm have conducted or participated, directly or indirectly, in the conduct of the affairs of either the Company as an "enterprise," or the association-in-fact enterprise consisting of Tanner, Lucas and Funk, or both. Defendants Tanner, Lucas, Funk, the Lucas firm, and Brown are also alleged to have conspired in violation of 18 U.S.C. § 1962(d) to violate § 1962(c).

Defendants' basic argument in support of its first proposition for dismissal is that as a matter of law, Media General failed to allege a sufficient nexus between the alleged "pattern of racketeering activity" and the defendants' use of that activity "to conduct or participate, directly or indirectly, in the conduct of" an enterprise's affairs.

■ Preliminarily the Court notes that fraud in the sale of securities is specifically

identified as a predicate act for purposes of defining racketeering injury under 18 U.S.C. § 1961(1). Clearly then the fact that an individual commits fraud in the sale of securities and also transfers a business interest in the enterprise does not bar a RICO claim. Defendants' reliance on the dictum in *United States v. Mandel,* 591 F.2d 1347, 1376 (4th Cir.1979), *cert. denied,* 455 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980), that the transfer of an interest in a business is the antithesis of operating it obscures the proper focus of the inquiry which this Court must undertake to conduct.

The federal circuits have formulated a variety of tests by which the sufficiency of an alleged nexus between the pattern of racketeering activity and the RICO-defendants' conduction or participation in the conduct of the enterprise can be assessed. In *United States v. Scotto,* 641 F.2d 47, 57 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), the court articulated the following test:

> "one conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise. Simply committing predicate acts which are unrelated to the enterprise or one's position within it would be insufficient."

*See also, United States v. Jannotti,* 729 F.2d 213, 226 (3d Cir.1984); *accord, United States v. Kovic,* 684 F.2d 512, 516 (7th Cir.), *cert. denied,* 459 U.S. 972, 103 S.Ct. 304, 74 L.Ed.2d 284 (1982). Under this test, there is no requirement that the enterprise benefit·from defendant's activity nor that the enterprise be corrupt, nor that the defendant has enhanced his position in the enterprise thereby. *Scotto,* 641 F.2d at 54.

A second test adopted by the Fifth Circuit in *United States v. Cauble,* 706 F.2d 1322, 1332 (1983), provides that:

> (a) defendant does not "conduct" or "participate in the conduct" of a lawful

enterprise's affairs, unless (1) the defendant had in fact committed the racketeering acts as alleged; (2) the defendant's position in the enterprise facilitated his commission of the racketeering acts, and (3) the predicate acts had some effect on the lawful enterprise. (footnote omitted)

In a footnote to the text quoted above, the court noted that the last element of its test, i.e., the predicate acts must affect the enterprise, can be satisfied "if the defendant exercised such control over the legal enterprise as to make his acts the acts of the enterprise.... In that event the defendant's connection with the racketeering acts is also the enterprise's connection." *Cauble,* 706 F.2d at 1333, n. 24.

■ Under either the Second Circuit's test in *Scotto* or the Fifth Circuit's test in *Cauble,* the Court is persuaded that Media General has alleged a sufficient nexus between the activities of the defendants and the affairs of the Company. Tanner, Lucas and Funk were heavily involved in the operation of the Company both prior to and after the sale of the stock to Media General. Their positions within the Company appear from the complaint's allegations to have facilitated their commission of the racketeering acts and arguably may have been the sole reason they were able to induce Media General's reliance.

■ Moreover, it is clear that the alleged association in fact of Tanner, Lucas and Funk was not dissolved by the sale of defendants' holdings to Media General. The alleged fraudulent pattern of racketeering activity formed the very essence of the affairs of that enterprise and clearly falls within the scope of § 1962(c). By its alleged participation in the affairs of this enterprise, and the Company's enterprise, the Lucas firm's activities would also fall within the scope of § 1962(c).

Finally, the sufficiency of the aforementioned § 1962(c) allegations removes any doubts created by defendants' motions about the viability of Media General's § 1962(d) claims against Brown, BCB, and

other defendants. It follows that defendants' first argument fails to provide grounds for dismissal of the RICO claims.

■ Defendants' second and third arguments urge the Court to dismiss Media General's RICO claims because the allegations are premature and because Media General has failed to allege a RICO-type injury. Defendants' arguments were rendered meritless by the recent Supreme Court decision in *Sedima S.P.R.L. v. Imrex Co., et al.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). *See also, American National Bank and Trust Company of Chicago, et al. v. Haroco, Inc., et al.,* 53 U.S.L.W. 5067, — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). In *Sedima,* the Supreme Court expressly held that the maintenance of a private cause of action under RICO does not require that a defendant first be convicted of the predicate acts comprising the RICO claim, nor does it require that plaintiff establish a "racketeering injury" beyond any injury resulting from the predicate acts themselves. Accordingly, the RICO counts cannot be dismissed on the basis of defendants' second and third arguments.

■ Defendants' fourth argument—plaintiff has failed to allege a pattern of racketeering activity—is also without merit. Pursuant to § 1961(5), a pattern of racketeering activity is established by alleging at least two acts of racketeering committed within ten years of each other with at least one act occurring after the effective date of the statute.

Contrary to defendants' assertions, the pleadings reflect that plaintiff alleges numerous racketeering activities which were both related and continuous. Their alleged racketeering activities commenced before the sale of the Company and continued subsequent thereto. It follows that defendants' fourth argument fails.

■ Next, Tanner, Lucas, Funk, Brown and BCB contend that the RICO claims should be dismissed because plaintiff has failed to allege the existence of an enterprise distinct from the liable person. First,

turning to defendants Tanner, Lucas, and Funk, the Court finds their argument meritless. In the complaint, Media General clearly alleges that defendants Tanner, Lucas and Funk (culpable persons) acted and conducted the affairs of the Company (enterprise) through a pattern of racketeering activity. The foregoing allegations alone are sufficient to demonstrate the existence of a culpable person distinct from the enterprise. Media General also claims Tanner, Funk and Lucas formed an association-in-fact enterprise. The fraudulent pattern of racketeering activity formed the very essence of the affairs of that enterprise. "Where persons associate 'in fact' ... each person may be held liable under RICO for his, her or its participation in fact through a pattern of racketeering activity." *Haroco v. American Nat. B. & T. Co. of Chicago,* 747 F.2d 384, 401 (7th Cir.1984), *affirmed,* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). Thus plaintiff's reference to Tanner, Lucas and Funk as culpable persons in the association "in fact" enterprise satisfies the § 1962(c) requirement that the liable person be employed by or associated with any enterprise which affects interstate or foreign commerce.

Similarly the Court concludes that plaintiff has also alleged the requisite person/enterprise relationship with respect to defendants Brown and BCB. Plaintiff's complaint, fairly construed, alleges that Brown and BCB were employed by or associated with either the enterprise, the Company, or the association-in-fact enterprise of Tanner, Funk and Lucas, and through a pattern of racketeering activity participated in the conduct of the affairs of said enterprise[s]. Accordingly, defendant's fifth ground for dismissal fails.

Defendants' final argument for dismissal addressed to the RICO claims is that Media General lacks standing to sue for the alleged business and property damages.

With regard to the "injury to business" claims, defendants contend that Media General is not the party suffering injury; that the alleged bribery and kickback schemes

could only have injured those customers of the Company whose employees were bribed. The Court's review of the pleadings, however, reflects that Media General was a duly organized corporation at the time it purchased the Company. Upon said purchase, Media General renamed the Company, Media General Broadcast Services, Inc. It is this affiliation that plaintiff alleges harmed its business after the public disclosure of the alleged fraudulent activities of the defendants. Proceeding under the premise that a Court considering a motion to dismiss must construe the complaint in a light most favorable to the plaintiff, the Court concludes that plaintiff's "injury to business" claim cannot be dismissed at this juncture of the lawsuit. While plaintiff will have to prove the alleged damages at trial, the allegations as set forth in the complaint, if proven, would clearly entitle plaintiff to relief.

Plaintiff's "property damage" claims are founded upon damage which Media General allegedly sustained to its property because of the damage to its subsidiary. Here, Media General is claiming damages for diminution in the value of its capital stock because of defendants' alleged fraudulent conduct. Defendants assert that "property damage" claims of RICO violations committed by agents of a subsidiary may not provide the basis of a civil action for damages by its stockholder parent. The Court agrees with this proposition. Plaintiff's property damage claims, though constructed in terms of an injury to plaintiff, actually reflect injury incurred by the Company, plaintiff's subsidiary. An action to redress injuries to a corporation cannot be maintained by a shareholder in his or its own name, but must be brought in the name of the corporation. *Warren v. Manufacturers National Bank of Detroit,* 759 F.2d 542 (6th Cir.1985). Moreover in *Warren,* the Sixth Circuit Court of Appeals expressly held that diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own name. *Id.* at 544, citing *Stevens v. Lowder,* 643 F.2d 1078, 1080 (5th Cir.) (citation omitted), *reh'g den.,* 652

F.2d 1001 (1981). Accordingly, plaintiff's claims for damage to its "property" are hereby dismissed. In sum all of plaintiff's RICO claims remain except that part of the complaint alleging property damages for diminution in the value of the Company's stock.

### FEDERAL AND STATE SECURITY LAW CLAIMS

In its complaint, Media General alleges violations of Section 17(a) of the 1933 Securities Act, Section 10(b) of the 1934 Securities Exchange Act, Rule 10b–5 promulgated thereunder, and the Tennessee Blue Sky Laws, T.C.A. § 48–2–121. These claims incorporate the factual allegations in the complaint relating to fraudulent misrepresentation and omission of material facts by defendants prior to Media General's entry into the Purchase Agreement.

Presently pending before the Court are several motions for dismissal of the security law claims. These motions include the Tanner, Funk and Lucas motions to dismiss claims 1 and 2 of Count I; defendants Brown and BCB motion to dismiss claims 1 and 3 of Count IV; and the Lucas firm's motion to dismiss claims 1 and 3 of Count III.

Defendant's first argument is that the security claims should be dismissed because the transaction upon which this lawsuit is based does not involve "securities" within the meaning of the anti-fraud provisions of the state and federal securities laws. Specifically defendants would have the Court apply the sale of business doctrine which provides that the sale of a business in which most or all of the company's stock is transferred merely as an indicia of ownership and where the purchaser intends to control the operations of the company purchased does not involve the sale of securities.

Defendants' argument must be rejected in view of the recent Supreme Court decision in *Landreth Timber Co. v. Landreth,* —— U.S. ——, 105 S.Ct. 2312, 85 L.Ed.2d 692 (1985); *See also Gould v. Rue-*

*fenacht,* —— U.S. ——, 105 S.Ct. 2308, 85 L.Ed.2d 708 (1985). In *Landreth* the Supreme Court expressly rejected the proposition that the application of the sale of business doctrine is mandatory when a purchaser buys most or all of a company's stock. Justice Powell opined that where an instrument bears the label "stock" and possesses all of the characteristics typically associated with stock, a court will not be required to look beyond the character of the instrument to the economic substance of the transaction to determine whether the stock is a security within the meaning of the Acts. 105 S.Ct. at 2310. In this case, it appears that the stock possessed those typical stock characteristics identified by the Supreme Court as traditionally associated with common stock—(i) the right to receive dividends contingent upon an apportionment of profits, (ii) negotiability, (iii) the ability to be pledged or hypothecated, (iv) voting rights in proportion of the number of shares owned, and (v) the capacity to appreciate in value. Therefore, defendants' first argument for dismissal of the security claims must fail.

Second, defendants move for dismissal of the security claims filed pursuant to § 17(a) of the 1933 Securities Act on the ground that § 17(a) does not provide for a private cause of action.

At least twice, the Supreme Court has reserved decision on whether 17(a) affords a private cause of action, *Herman & Maclean v. Huddleston,* 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *Teamsters v. Daniel,* 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979) and the Sixth Circuit has not definitively decided the question. *See Herm v. Stafford,* 663 F.2d 669, 678 n. 12 (6th Cir.1981) (assuming without deciding that a private right of action exists); *Nickels v. Koehler Management Corp.,* 541 F.2d 611 (6th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977) (issue not raised); *But cf., Jones v. First Equity Corp. of Florida,* 607 F.Supp. 350, 355 (E.D.Tenn.1985); *Basile v. Merrill, Lynch, Pierce, Fenner & Smith,* 551 F.Supp. 580, 585–87 (S.D.Ohio 1982) (Con-

gress did not intend to imply a private cause of action).

■ This Court is persuaded by the reasoning underlying the decisions in *Jones* and *Basile* and therefore concludes that Section 17(a) does not afford a private cause of action. Accordingly defendants' motion to dismiss is granted with respect to plaintiff's claim alleged under Section 17(a) of the Securities Act of 1933.

■ Next, defendant Funk, separately, moves for a ruling that T.C.A. § 48–2–122(h), which provides the statute of limitations applicable to actions under Tennessee's Blue Sky Law, also applies to plaintiff's claims under section 10(b) and Rule 10b–5 and for a determination that as applied, these limitation periods bar the plaintiff's claims arising under the federal and state securities laws. For the reasons stated below, the Court concludes that T.C.A. § 48–2–122(h) does not provide the statute of limitations applicable to plaintiff's claims under 10(b) and 10b–5.

Neither 10(b) nor 10b–5 provides a statute of limitations governing private causes of action brought under their provisions. *Carothers v. Rice,* 633 F.2d 7, 8 (6th Cir. 1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1702, 68 L.Ed.2d 199 (1981). Moreover federal courts have refused to adopt a uniform nationwide statute of limitations for actions under 10(b) or 10b–5. Instead the courts uniformly resort to state law to select the applicable limitations period. The law of Tennessee, therefore, provides the statute of limitations applicable to this case. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 9, 47 L.Ed.2d 668 (1976); *Nickels v. Koehler Management Corp.,* 541 F.2d 611, 613 (6th Cir.1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977).

■ To determine the applicable statute of limitations arising under these provisions, federal courts borrow the state statute of limitation which best serves the purposes of the federal securities laws. *Ernst & Ernst v. Hochfelder, supra; Herm v.*

*Stafford,* 663 F.2d at 677. The choice of the applicable time period is a question of federal law. *See, e.g., McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888, 891 (5th Cir.1979).

The Sixth Circuit has considered the question of which state statutory period applies to actions under 10(b) and 10b–5 in a number of cases, although never, apparently, in a case for which Tennessee law provided the array of limitation periods. Nevertheless the reasoning of these Sixth Circuit opinions forms the basis for the Court's analysis of the question at bar. Typically, the federal courts select the governing period from either the period governing actions for fraud under a state's Blue Sky Law or the period applicable to claims under a state's common law or the period applicable to claims under a state's common law action for fraud. *See Carothers,* 633 F.2d at 13. However, this Court is faced with a third choice—Tennessee's catch-all statute of limitations provisions which apply to any cause of action not covered by some other limitation period. In the only decision to date wherein the limitation period for a 10(b) and 10b–5 action has been taken from Tennessee law, the Middle District of Tennessee held that the applicable statute of limitations for a 10(b) or 10b–5 action was ten (10) years citing what is now T.C.A. § 28–3–110(3). *Denny v. Performance Systems, Inc.,* [1971 Transfer Binder] Fed.Sec.L.Rep. (CCH) paragraph 93,387 at 81–981 (M.D. Tenn.1971).

■ Where two or more state law remedies are similar but not identical to a 10(b) and 10b–5 action, courts adopt the statute of limitations that provides a longer, as opposed to shorter limitations period. *See, e.g., Herm,* 663 F.2d at 678; *Nickels,* 541 F.2d at 618; *Carothers,* 633 F.2d at 14; *Basile v. Merrill, Lynch, Pierce, Fenner & Smith,* 551 F.Supp. 580, 592 (S.D.Ohio 1982).

Preliminarily this Court rejects the ten-year statute of limitations period chosen in *Denny. Denny* was decided prior to recent amendments in Tennessee's Blue Sky Law antifraud provisions which, since amended, is very similar in its language to that found in Rule 10b–5. Additionally, *Denny* was decided prior to the Tennessee Supreme Court's decision in *Vance v. Schulder,* 547 S.W.2d 927 (Tenn.1977) which held that the applicable statute of limitations for an action sounding in deceit is three years.

A comparison of the elements that must be proven to establish a 10(b) or 10b–5 cause of action with those required to establish a common law action for deceit (fraud) and, an action under Tennessee's Blue Sky Law antifraud provision, reveals that the elements of a claim for common law deceit under Tennessee law more closely resembles the elements of a 10(b) and 10b–5 action than do those required under the Blue Sky Law.

Generally, to state a private cause of action under 10(b) and 10b–5, the claimant must establish the following elements:

1) the use of jurisdictional means 2) to implement a deceptive or manipulative practice (with the requisite scienter) 3) in connection with 4) the purchase or sale 5) of a security 6) causing 7) damages. *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1026 (6th Cir.1979).

■ Typically in an action under 10(b) and 10b–5, damages are measured by the difference between the fair value of all that the defrauded purchaser received and the amount that the defrauded purchaser paid. *Nickels v. Koehler Management Corp.,* 541 F.2d 611, 617 (6th Cir.1976).

Tennessee's common law action for deceit requires proof of almost identical elements. Tennessee law recognizes two distinct types of fraud (deceit): intentional fraud and negligent fraud. *See Union Planters National Bank of Memphis v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174, 1186 (6th Cir.1981). However, for purposes of the issues at bar, this Court need only consider the elements of an action for intentional fraud (deceit).

At common law, an action for deceit is established by proof:

(1) that a false misrepresentation has been made knowingly, without belief in its truth or recklessly (whether it be true or false) [This requirement is equivalent to Rule 10b–5's scienter requirement. *See, Union Planters*, 651 F.2d at 1186 n. 17.];

(2) of an existing or past material fact;

(3) which induces reasonable reliance; and

(4) results in damages.

*Edwards v. Travelers Ins. of Hartford, Connecticut*, 563 F.2d 105, 110–13 (6th Cir. 1977). An award of damages for deceit under Tennessee law is measured by the difference between the actual value of the property received at the time of the making of the contract and the value that the property would have had if the representations had been true. *Haynes v. Cumberland, Inc.*, 546 S.W.2d 228, 233 (Tenn.Ct.App. 1976).

The nearly, if not entirely, identical elements of a common law deceit action and a 10(b)/10b–5 action provide a distinct contrast to the results of a comparison of the elements of a 10(b)/10b–5 and a Tennessee Blue Sky Law cause of action. First, although no court appears to have interpreted § 48–2–121, it is clear from the text of the statute, that § 48–2–122(a)(2) makes any person who sells a security in violation of § 48–2–121(a) liable for damages. However, unlike an action under 10(b) and 10b–5 which generally authorizes a court to award damages measured by the difference between the value of the security purchased and the amount paid, T.C.A. § 48–2–122(a)(2) authorizes an action for rescission to recover the consideration paid after intentional or negligent fraud.

In addition, under § 48–2–122(c), a person who "willfully engages in any act or conduct" which violates § 48–2–121 shall be liable for damages. The meaning of "willfully" is not clear in this context but appears to mean intentionally. So construed, the elements of a cause of action under this provision differ from those of a 10(b) and 10b–5 action in at least one respect—a 10(b) and 10b–5 action can be established where a seller acts recklessly as well as intentionally. *See, Mansbach*, 598 F.2d at 1026.

In view of the differences between causes of action under 10(b) and 10b–5 and the Tennessee Blue Sky Laws, and the similarities between actions under the federal laws and Tennessee common law action of deceit, the Court concludes that the three-year statute of limitations period governing common law deceit claims is the applicable state statutory period. Accordingly, defendant Funk's motion for application of the Tennessee Blue Sky Law statute of limitations period to the federal securities claims is hereby denied.

■ Defendant Funk also moves for dismissal of plaintiff's claims alleged under the Tennessee Blue Sky Law because they were filed more than one year after plaintiff should have discovered defendant's alleged fraudulent wrongdoings. Plaintiff avers that it did not and should not suspect and discover the fraud until August 11, 1984. This sufficiently creates a factual issue on whether plaintiff should have discovered the fraud within one year from the filing of this suit on March 9, 1984.

Furthermore another time period for filing under the Blue Sky Law statute is two years after the act or transaction constituting the violation. Inasmuch as plaintiff's complaint was filed less than two years after the date of the sale of the stock, May 15, 1982, defendant's motion to dismiss the claims under the Tennessee Blue Sky Law for untimeliness must be denied.

## DECLARATORY JUDGMENT CLAIMS

The tenth claim of Count I of the complaint seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that: (A) Media General's obligation for certain additional payments under the Purchase Agreement is independent of and severable from Media General's other obligations; (B) Media General has no obligation to make any additional payments; and (C) Media General is entitled to reformation or rescission of part or all of the Purchase Agreement.

Defendants Tanner, Lucas, and Funk have moved to dismiss the tenth claim. In support of their motions, defendants argue that under Tennessee law a contract may not be rescinded in part, that reformation is available under Tennessee law only where mistake or the existence of an alternative, antecedent agreement is plead, and that no actual controversy exists.

In its reply to these motions, Media General apparently concedes that under Tennessee law it had no right to a declaratory judgment that its obligations under the Purchase Agreement are severable or that it is entitled to reformation or rescission. Media General, however, continues to assert that it is entitled to a declaratory judgment that it has no obligation to make any additional payments. For the reasons stated below, the Court disagrees.

Under Tennessee law, a party induced by fraud to enter into a contract may treat the contract as voidable and sue for rescission and restitution, or affirm the contract and bring an action for damages. *See, e.g., Vance v. Schulder*, 547 S.W.2d 927 (Tenn. 1977). Where the fraudulent misrepresentation relates to the contents or effect of a writing evidencing or embodying an agreement, reformation may be appropriate. *See generally*, 13 Tenn. Jurisprudence *Fraud and Deceit*, Section 28 at 232–33 (1984); Restatement (Second) of Contracts, Section 166 (1981).

██ Where, as here, the purchaser elects to affirm the contract and sue for damages in an action for deceit, he is foreclosed from obtaining relief in the form of a total or partial rescission since granting the declaration requested would effectively constitute a partial rescission of the Purchase Agreement and, possibly, permit an improper recovery on behalf of the plaintiff.

A declaratory judgment has the force and effect of a final judgment. 28 U.S.C. § 2201. As such, a judgment that Media General owes no additional payments under the Purchase Agreement would preclude defendants from receiving any portion of these payments even if the fraudulent acts they allegedly committed caused plaintiff damages in an amount less than the total amount of additional payments which would otherwise be due in the future. In addition, the declaration requested by plaintiff effectively serves as a partial rescission of a contract which is forbidden by Tennessee law. *See Baird v. McDaniel Printing Co.*, 25 Tenn.App. 144, 153 S.W.2d 135 (1941).

For the foregoing reasons, defendants' motions to dismiss claim 10 of Count I is hereby granted.

## COUNT FIVE (EQUITABLE CLAIMS)

˙ In its First Amendment to the Complaint, Media General added two paragraphs of allegations, a "Count V," and a prayer for equitable remedies, including a constructive trust, equitable lien, and accounting, as well as preliminary and permanent injunctive relief. Defendants moved to dismiss these claims for two reasons: 1) the restitution and rescission claims alleged in Count V are inconsistent with the affirmation of the contract manifested by the claims for legal damages in the original complaint; and 2) the factual allegations underlying Count V fail to state an independent claim for which any relief, legal or equitable, can be granted.

Turning to defendants' argument on election of remedies, this Court is obliged to apply Tennessee law. *Arber v. Essex Wire Corporation*, 490 F.2d 414, 422 (6th Cir. 1974). Tennessee law has expressly defined election of remedies as follows:

An election of remedies in a fact situation must contain: (a) factors making more than one remedial form available; (b) the forms must in their theory, be inconsistent or repugnant; (c) the choice must be a willful one, consciously made; and (d) the remedy chosen must be pursued so as to clearly indicate an irrevocable election. *Barger v. Webb* [216 Tenn. 275] 391 S.W.2d 664, 666 (1965)

██ Plaintiff contends that the relief sought in the amended complaint is not inconsistent because it is not seeking to

rescind the contract and that even if the remedies were inconsistent, it has made no irrevocable election of the legal remedy. The test of inconsistency in the election is whether the assertion of one remedy necessarily involves the negation or repudiation of the other. *Clarke v. Ripley Savings Bank & Trust Co.*, 181 S.W.2d 386, 27 Tenn.App. 387 (1943). Thus, the Court must determine whether the facts relied on to support plaintiff's equitable claims are repugnant to or negate the facts relied on as a basis for the legal remedies. Applying this standard, the Court is persuaded that it should not dismiss plaintiff's fifth count of the complaint. Plaintiff's pleadings reflect that plaintiff is not attempting to rescind the contract. In Count V, plaintiff seeks to establish an equitable lien for proceeds in excess of the 39-million-dollar purchase price. This claim is clearly one that is consistent with an affirmance of the contract, since plaintiff is not attempting to recover the purchase price but rather secure funds that actually belong to Media General because of defendants' allegedly fraudulent behavior. Plaintiff has not, therefore, chosen to pursue inconsistent remedies and the case will not be dismissed on that basis.

Even assuming arguendo, that plaintiff's equitable and legal claims were inconsistent, dismissal of Count V would not be warranted at this juncture of the proceedings. Though Tennessee law is not concise as to what point in the litigation a party would have to elect between inconsistent remedies, the law is clear that "election" does not take place at the pleading stage. *Barnes v. Walker*, 234 S.W.2d 648, 191 Tenn. 364 (1950); *Barger v. Webb*, 391 S.W.2d 664, 216 Tenn. 275 (1965). Further this Court is persuaded by the reasoning in *Petty v. Darin* 675 S.W.2d 714 (Tenn.App. 1984) that "under our modern rules of pleading and discovery, a party may not know the facts until discovery is completed, or even later, and to require a party to elect between inconsistent theories before the facts in the case are developed would work a great injustice." (p. 717). Thus the Court concludes dismissal would not be ap-

propriate, due to failure to elect, at this stage of the proceedings.

Finally defendants argue that dismissal of Count V is warranted because plaintiff has alleged no new wrongdoings to support its request for equitable relief. Defendants argue that plaintiff's pleadings fail to demonstrate that Media General as a potential judgment creditor will in any way be harmed by defendants' investment of the proceeds of the sale. The Court cannot accept defendants' constrained reading of plaintiff's complaint. To reemphasize in a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations must be accepted as true. Plaintiff's pleadings and memoranda, when liberally construed, clearly express concern that defendants would attempt to conceal assets so as to hinder plaintiff's judgment rights. Accordingly, defendant's proposition fails and Count V remains.

## FRAUD CLAIMS

The Brown defendants seek dismissal of Count IV on the grounds that the five claims alleged against them therein are premised upon fraud and that plaintiff has failed to plead the allegedly fraudulent transactions with particularity, pursuant to *Fed.R.Civ.P.* 9(b).

Precisely, the Brown defendants contend that the fraud claims in Count IV are vague, uninformative and nowhere identify the time, place or the maker of the alleged representations and statements made to Media General by the Brown defendants. To support their contention, defendants direct the Court's attention to paragraphs 25 through 27 and 34 of the complaint.

Rule 9(b) of the Federal Rules of Civil Procedure is explicit in its mandate that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Courts have construed the language of Rule 9(b) "circumstances constituting fraud" to require particularized pleadings of the alleged falsehood as well as defendants' al-

leged knowledge of the falsehood. Additionally pleading of matters such as the time, place and content of the alleged false representations is required. *Wayne Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 12 (1st Cir. 1984); *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980); *Kellman v. Ics., Inc.*, 447 F.2d 1305 (6th Cir. 1971).

▆ Upon review of the complaint, the Court concludes that plaintiff has alleged with sufficient particularity what defendants' alleged wrongdoings included. The complaint, however, is lacking with regard to pleading those facts that would demonstrate defendants had knowledge of the wrongdoings.

Inasmuch as plaintiff's complaint surpasses all other aspects of particularized pleading requirements of Rule 9(b), the Court concludes that dismissal is not warranted at this juncture of the proceeding. Rather, plaintiff is hereby ordered to file a more definite statement alleging with particularity defendants' knowledge of the alleged fraudulent wrongdoings.

Defendant Funk moves the Court for an order directing the plaintiff to file a more definite statement of the time, place and circumstances of the fraud alleged in the original complaint. Additionally, Funk moves the Court to order plaintiff to plead with more particularity all such aspects of plaintiff's efforts or attempts to discover defendant's alleged fraudulent wrongdoings.

The first part of defendant Funk's motion is directed at defendant's lack of knowledge with regard to the charges and the basis of the charges asserted against him. This portion of the motion is meritless. Upon review of the pleadings and complaint filed herein, the Court finds that plaintiff has set forth with particularity the time, place and content of defendant's wrongdoing so as to apprise Funk explicitly of the claims against him. Accordingly, defendant's motion with respect to the time, place and circumstances of the fraud is denied.

In the second part defendant moves the Court to order plaintiff to plead with more particularity the steps plaintiff took in the exercise of due diligence to discover the alleged fraudulent wrongdoings. Defendant Funk argues such particularity in the pleading is required to establish the fraudulent concealment and plaintiff's due diligence to discover the fraud.

Plaintiff, however, would have the Court find that such particularity is not required in the case at bar. Plaintiff argues that this Case is distinguishable from those cases that require specific pleadings of fraudulent concealment in that the statute in the instant case has a "discoverability" provision whereas the statutes in the cases requiring fraudulent concealment pleading have no such "discoverability" provision.

T.C.A. § 48–2–122(h) provides in pertinent part:

> No action shall be maintained under this section unless commenced before … one (1) year after the discovery of the facts constituting the violation, *or after such discovery should have been made* by the exercise of reasonable diligence, whichever first expires.

(emphasis added). The "discoverability" language emphasized above was included by an amendment in 1980. It is true that the cases articulating a fraudulent concealment standard of pleading predate the 1980 amendment of T.C.A. § 48–2–122(h), or did not involve statutes with language like the "one year from date of discoverability" portion of T.C.A. § 48–2–122(h). *See, e.g., Campbell v. Upjohn Co.*, 676 F.2d 1122 (6th Cir.1982); *Herm v. Stafford*, 663 F.2d 669 (6th Cir.1981); *Dayco Corporation v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir.1975).

This Court, however, does not find this fact alone persuasive so as to conclude that Media General need not allege with particularity the actions surrounding its exercise of due diligence. Especially where as here, T.C.A. § 48–2–122(h) expressly states that failure to plead within the one year "after such discovery should have been made by the exercise of reasonable diligence" will

bar actions under the statute on the grounds of untimeliness. It follows that it is only logical that a party would need to plead beyond the technical pleading requirement of "reasonable diligence."

In the instant action, however, the Court finds that Media General has sufficiently alleged actions surrounding its use of reasonable diligence to discover defendant's fraudulent wrongdoings. In its pleadings Media General alleged: acts of concealment by defendant; that it failed to discover defendant's wrongful acts until after August 11, 1983; and that its failure to detect the fraud was due to defendant's control, management and operation of the Company as a fiduciary to plaintiff.

Accordingly, defendant's motion for a more definite statement is hereby denied.

## COSTS AND FEES

Defendant Funk requests the Court to require an undertaking by plaintiff for costs, fees, and other litigation expenses of defendant Funk. This motion is filed pursuant to 15 U.S.C. § 77k(e), of the Securities Act of 1933, which provides in pertinent part:

> "In any suit under this or any other section of this subchapter the court may, in its discretion, require an undertaking for the payment of the costs of such suit, including reasonable attorney's fees, and if judgment shall be rendered against a party litigant, upon motion of the other litigant, such costs may be assessed in favor of such party litigant (whether or not such undertaking has been required) if the court believes the suit or the defense to have been without merit...."

Defendant Funk concedes that the motion is not yet timely, but rather contends that his intent is to preserve this relief for the appropriate state of litigation.

The Court hereby notes receipt of defendant's motion and will reserve disposition until a later stage of the litigation.

## MOTION FOR STAY

Defendant Funk requests the Court to certify, pursuant to 28 U.S.C. § 1292(b) certain issues to the Court of Appeals for the Sixth Circuit, and moves the Court to stay the present proceedings pending a ruling on the issues so certified. The Court's review of the issues present in this action, and the factual allegations asserted by the parties reveals that none of the issues presented warrant certification.

It is this Court's duty to decide issues of law which are presented to it and only in novel circumstances will this Court be justified in certifying issues to the court of appeals. The pertinent claims, although difficult and open to dispute, do not merit certification.

Accordingly, defendant's motion to stay is hereby denied.

## CONCLUSION

To summarize, the Court orders dismissal of:

(1) Alleged violations of Section 17(a) of the 1933 Securities Act;

(2) Alleged claims of property damage under 18 U.S.C. § 1962. (This does not include alleged damages to business); and

(3) claim for declaratory relief under 28 U.S.C. §§ 2201 and 2202.

The Court further orders:

(1) plaintiff to allege with more particularity claims against Brown and BCB; and

(2) that decision on defendant Funk's motion for undertaking of costs and fees is hereby reserved.

Finally, all other motions addressed in this Order are denied.

ALL OF THE ABOVE IS SO ORDERED.